UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DARYL THOMAS,<br>         Plaintiff,<br><br>     v.<br><br>ROBERT BUECHELE,<br>SGT. F.N.U. HICKS, SGT. C.<br>LONGO, HOPE HALL, YOLANDA<br>SEARLES, GLADYS KRASCINSKI,<br>VOLUNTEERS OF AMERICA<br>DELAWARE VALLEY, INC., and<br>JOHN OSZVART,<br>         Defendants. | CIVIL NO. 10-0879(NLH)(KMW)<br><br>**OPINION** |

**APPEARANCES:**

JUSTIN TERENCE LOUGHRY
LAWRENCE W. LINDSAY
LOUGHRY & LINDSAY,LLC
330 MARKET STREET
CAMDEN, NJ 08102

On behalf of plaintiff

DANIELA IVANCIKOVA
STATE OF NEW JERSEY
OFFICE OF THE ATTORNEY GENERAL
HUGHES JUSTICE COMPLEX
25 MARKET STREET
TRENTON, NJ 08625

    On behalf of defendants Robert Buechele, Sgt. F.N.U. Hicks,
    Sgt. C. Longo, and John Oszvart

MICHAEL S. MIKULSKI, II
AMANDA M. LOLLI
CONNOR WEBER & OBERLIES, P.C.
236 WEST ROUTE 38 EAST
SUITE 200
MOORESTOWN, NJ 08057

    On behalf of defendants Hope Hall, Yolanda Searles, Gladys
    Krascinski, and Volunteers of America Delaware Valley, Inc.

**HILLMAN**, District Judge

    Presently before the Court are the motions of defendants for summary judgment on plaintiff's claims that defendants violated his due process rights when he was removed from a halfway house, returned to prison, and denied parole because of a false charge which resulted in his termination from his work release program.[1] For the reasons expressed below, defendants' motions will be granted.

**BACKGROUND**

    Plaintiff, Daryl Thomas, was an inmate in the custody of the New Jersey Department of Corrections after he was sentenced on September 22, 2006 to an eight-year term. As of February 2008, plaintiff participated in a community release program, residing at a halfway house, defendant Hope Hall, in Camden, New Jersey, which is operated by defendant Volunteers of America Delaware Valley. While residing at Hope Hall, plaintiff worked for Telepoint as a telemarketer. On February 21, 2008, plaintiff was terminated from Telepoint because he was accused of improperly recording and retaining the personal information of Telepoint's customers.

    Plaintiff denied his wrongdoing, but he reported his termination to his Hope Hall counselors. Plaintiff claims that

---

[1] Also pending is the state defendants' motion to seal plaintiff's parole records. That motion will be granted. See L. Civ. R. 5.3; N.J.A.C. 10A:71-2.2.

he was entitled to five days to find new employment so that he would not be sent back to prison.  Plaintiff claims that instead of providing him the five day grace period he was immediately returned to full custody, and defendant Officer Longo charged him with a ".257" violation (violating a condition of any community release program).

Plaintiff appealed that decision to the Central Reception and Assignment Facility ("CRAF"), and a hearing was set for February 27, 2008.  However, the hearing was postponed, at plaintiff's request, until March 3, 2008 so that he could obtain witness statements.  Ultimately, when plaintiff declined to make a statement and his witnesses refused to testify on his behalf, defendant Hearing Officer Oszvart upheld the .257 charge based on a Hope Hall staff report prepared by defendant Yolanda Searles, which reported Telepoint's accusation that plaintiff wrote down clients' personal information and put the paper with the information in his backpack.  On that same day, plaintiff filed an administrative appeal, and on March 4, 2008, defendant Buechele, Assistant Superintendent of CRAF, upheld the charge.

Plaintiff appealed the decision to the New Jersey Superior Court, Appellate Division, which then remanded the matter for further proceedings.  On October 21, 2008, Hearing Office Maguire found that plaintiff's return to full custody was not warranted because the contract plaintiff signed with Hope Hall indicated he

was to receive five days to find new employment. The .257 charge was dismissed.

While plaintiff's appeal of the .257 charge was pending, on August 30, 2008, plaintiff was cited in an unrelated incident with a .306 charge, conduct that disrupts or interferes with the security or orderly running of the correctional facility. Plaintiff filed a series of appeals which ended up in the Appellate Division, but the matter was dismissed for lack of prosecution on May 6, 2009. The .306 charge therefore remained on plaintiff's record.

Plaintiff claims that the improper imposition of the .257 charge resulted in a violation of his due process rights because it caused him to return to full custody and prevented him from obtaining "straight parole." Plaintiff claims that specifically because of the .257 charge, instead of being released on full parole after his October 16, 2008 parole board hearing,[2] the parole board granted him conditional parole to a halfway house effective March 9, 2009, where he remained until September 2009.[3]

Defendants have moved for summary judgment on various

---

[2] Plaintiff received his first parole board hearing on October 30, 2007. Parole was denied at that time, and a hearing was scheduled for a year later.

[3] Plaintiff's maximum release date as of February 1, 2008 was November 27, 2011. At his October 16, 2008 parole board hearing, the board moved up his maximum release date to September 25, 2011.

4

bases.[4]  Primarily, defendants argue that plaintiff's due process rights were not violated because he was not entitled to any specific housing assignment while an inmate of the NJDOC, and even if the .257 charge affected the conditions of parole, his due process rights were not violated because he received a proper hearing and he was actually released earlier than his maximum release date.  Plaintiff has opposed defendants' motions.

---

[4] Because defendants are government officials, quasi-judicial officers, and quasi-governmental officials, they argue that one basis for judgment in their favor is that they are entitled to qualified immunity.  The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  "Qualified immunity balances two important interests--the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  Pearson v. Callahan, 129 S. Ct. 808, 815 (2009).  The doctrine provides a government official immunity from suit rather than a mere defense from liability, and, thus, the issue of whether qualified immunity applies should be decided at the earliest possible stage in litigation.  Id.

In order to determine whether a government official is entitled to qualified immunity, two questions are to be asked: (1) has the plaintiff alleged or shown a violation of a constitutional right, and (2) is the right at issue "clearly established" at the time of the defendant's alleged misconduct?  If the answer to either question is "no," the analysis may end there.  See Pearson, 129 S. Ct. at 816.  Because the Court finds that plaintiff cannot support his due process claim, the Court need not address the second step in the qualified immunity analysis.

**DISCUSSION**

    **A.**    **Subject Matter Jurisdiction**

Plaintiff has brought federal constitutional claims pursuant to 42 U.S.C. § 1983. This Court has jurisdiction over plaintiff's federal claims under 28 U.S.C. §§ 1331 and 1343.

    **B.**    **Standard for Summary Judgment**

Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(c).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting

Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp., 477 U.S. at 323; see Singletary v. Pa. Dept. of Corr., 266 F.3d 186, 192 n.2 (3d Cir. 2001) ("Although the initial burden is on the summary judgment movant to show the absence of a genuine issue of material fact, 'the burden on the moving party may be discharged by 'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case' when the nonmoving party bears the ultimate burden of proof." (citing Celotex, 477 U.S. at 325)). Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id. Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256-57. A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements. Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

### C.   Analysis

Plaintiff contends that the ultimate dismissal of the .257 charge on the basis that he was not afforded five days to find

7

new employment, and the overall unfounded basis for the charge in the first place,[5] resulted in the impermissible depravation of his liberty interests in (1) living in a halfway house instead of the prison, and (2) being granted full parole a year earlier.[6] Even accepting as true all of plaintiff's allegations, including the premise that he was eligible for parole as of October 18,

---

[5] Plaintiff argues in detail why the .257 charge was improper, specifically contending that allegedly violating an employer's rule and being fired from employment are not "violation[s] of community release." This argument was accepted by the prison when plaintiff's charge was ultimately dismissed. The Court similarly accepts as true plaintiff's argument. That the charge was improper does not, however, create a due process violation in his return to full custody and the alleged delay of his release on parole.

[6] To the extent that plaintiff also claims that he did not receive proper procedural due process for his challenge to the .257 charge, such a claim is without merit. Plaintiff received all the administrative hearings he was entitled to, he was afforded the opportunity to present evidence, the hearing officers issued written explanations for their decisions, and as the result of plaintiff's efforts, his charge was ultimately dismissed. See Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 455-46 (1985) ("[T]he requirements of due process are met if some evidence supports the decision by prison disciplinary hearing officers to issue disciplinary sanctions. . . . Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board."); Wolff v. McDonnell, 418 U.S. 539, 562-71 (1974) ("An inmate is entitled to (1) written notice of the charges and no less than 24 hours to marshal the facts and prepare a defense for an appearance at the disciplinary hearing; (2) a written statement by the fact finder as to the evidence relied on and the reasons for the disciplinary action; and (3) an opportunity to call witnesses and present documentary evidence in his defense when to do so will not be unduly hazardous to institutional safety or correctional goals.").

8

2008, and that the parole board considered significant the .257 charge in making its parole decision,[7] this Circuit's and the Supreme Court's precedents make clear that plaintiff's due process claims fail: "As long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." Asquith v. Department of Corrections, 186 F.3d 407, 410 (3d Cir. 1999) (citing Hewitt v. Helms, 459 U.S. 460, 468 (1983)) (other citations omitted).

As of February 2008 when plaintiff lived in the halfway house, plaintiff's maximum release date was November 27, 2011. After his October 16, 2008 parole board hearing, his maximum release date was changed to September 25, 2011. Plaintiff not only received parole as of March 5, 2009, but after he successfully completed the 180 day "Bo Robinson Steps Program - Stages to Enhance Parolee Success Program," he was released from custody in September 2009, and terminated from parole two months earlier than his pre-infraction maximum release date. Thus, as a general matter, plaintiff was not deprived of any liberty interest since he was released from all restraints on his liberty

---

[7]The transcript of the plaintiff's October 16, 2008 parole board hearing had been destroyed pursuant to the N.J. State Parole Board retention policy.

9

by his maximum release date.

More specifically, with regard to plaintiff's transfer back to prison from the halfway house, an inmate's removal from a work release program and return to prison does not amount to a deprivation of a liberty interest. See Sandin v. Conner, 515 U.S. 472, 483-484 (1995) (explaining that "States may under certain circumstances create liberty interests which are protected by the Due Process Clause.  But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" (internal citations omitted)); Asquith v. Department of Corrections, 186 F.3d 407, 412 (3d Cir. 1999) (explaining that because "an inmate is normally incarcerated in prison, Asquith's return to prison did not impose atypical and significant hardship on him in relation to the ordinary incidents of prison life and, therefore, did not deprive him of a protected liberty interest"); Asquith v. Volunteers of America, 1 F. Supp. 2d 405, 406 (D.N.J. 1998) (explaining that Asquith's due process rights were not violated when he was terminated from a New Jersey Department of Corrections community work release program despite a finding that he was not guilty of the disciplinary infraction that had led to

10

his initial removal from the program); N.J.A.C. 10A:20-4.19(d) ("Major disciplinary violation charges shall result in the immediate transfer of the inmate to a correctional facility within the New Jersey Department of Corrections."). Thus, plaintiff's transfer from the halfway house to full custody, for whatever reason, cannot be a violation of his due process rights.

With regard to plaintiff's parole date, and its alleged delay due to the .257 charge, the due process clause applies only when the government deprives a person of liberty or property, and "there is no constitutional or inherent right to be conditionally released before the expiration of a valid sentence." Greenholtz v. Inmates of Neb. Penal & Correctional Complex, 442 U.S. 1, 7 (1979). Moreover, although a state "may under certain circumstances create liberty interests which are protected by the Due Process Clause," Sandin, 515 U.S. at 486, New Jersey's due process requirements were met in this case. In the context of initial parole decisions in New Jersey, due process only requires the opportunity for the prisoner to be heard and an explanation as to why he fell short of qualifying for parole. See New Jersey Parole Bd. v. Byrne, 460 A.2d 103, 112 (N.J. 1983) (citing Greenholtz, 442 U.S. at 16).

Here, even though plaintiff feels that it was unfair that the parole board considered a charge that was unwarranted and was ultimately dismissed, plaintiff received a hearing, where he

11

<sh

discussed the .257 charge with the parole board, and where he was provided with an explanation as to the parole board's decision.[8] Furthermore, plaintiff was granted parole, and he was released from parole supervision two months earlier than his original maximum release date. Because it could be found that plaintiff was provided proper due process if he had been denied parole, the fact that he was granted parole and was ultimately released from custody earlier than his original sentence amplifies the finding that plaintiff received proper due process.[9]

## **CONCLUSION**

For the reasons expressed above, defendants must be granted

---

[8] Plaintiff does not allege what other factors the parole board considered in making its parole decision, and he does not claim that they considered the August 30, 2008 .306 charge, which plaintiff does not dispute was on his record at the time of the parole board hearing. The Court, however, accepts as true plaintiff's contention that the parole board considered only the .257 charge in making its parole determination.

[9] In his papers, plaintiff claims that as a result of the .257 charge and return to maximum custody in the prison, he earned fewer jail credits than he would have while in the halfway house under minimum custody. Plaintiff has not provided any evidence to demonstrate what good time credits he lost as a result of the transfer. Additionally, he does not refute the state defendants' evidence that his .306 charge prevented his classification of full minimum, regardless of the .257 charge. Even if, however, he was entitled to good time credits, and those credits created a liberty interest, the due process clause only requires that he did not lose them arbitrarily or without a "modicum of evidence" to support the revocation. Superintendent, Massachusetts Correctional Institution, Walpole v. Hill, 472 U.S. 445, 455 (1985). As noted above, plaintiff received the proper due process with regard to his challenge to the .257 charge, as well as the .306 charge.

summary judgment in their favor on plaintiff's claims that defendants violated his due process rights.  An appropriate Order will be entered.


Date: September 18, 2012                s/ Noel L. Hillman
At Camden, New Jersey                   NOEL L. HILLMAN, U.S.D.J.